```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
VIRGEN C.,                          )
                                    )
         Plaintiff,                 )   C.A. No. 16-480 WES
                                    )
    v.                              )
                                    )
NANCY A. BERRYHILL, Acting          )
Commissioner of Social Security,    )
                                    )
         Defendant.                 )
_____ )
```

## ORDER

WILLIAM E. SMITH, Chief Judge.

Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R. & R.") (ECF No. 18) in which she called Plaintiff Virgen C.'s case a "close call," ultimately suggesting, however, that the Court deny Virgen's[1] Motion to Reverse the Decision of the Commissioner (ECF No. 11) and grant Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 15). After holding its own hearing, and reviewing Magistrate Judge Sullivan's thoughtful and thorough R. & R., the Court makes the admittedly difficult call presented by this case a little differently, and remands for further administrative proceedings.

Review of a final decision in a disability claimant's case includes "determining whether the ALJ [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper

---

[1] The Court uses Virgen's first name in the interest of privacy; no disrespect is intended.

quantum of evidence," Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), which means upholding an ALJ's factual findings if they are supported by "substantial evidence," that is, "more than a scintilla," but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quotation marks omitted).

The Court will skip a recapitulation of the case's procedural history – referring those interested to that found in the R. & R. (see R. & R. 2-6) – and go straight to Virgen's meritorious objection, which is that the ALJ improperly discounted the opinion of Virgen's treating physician,[2] leaving the residual functional capacity[3] ("RFC") formulated for Virgen without substantial support. Cf. Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-cv-707-JD, 2018 WL 2932732, at *9-10 (D.N.H. June 12, 2018) (remanding where residual functional capacity unsupported by substantial evidence).

Dr. Laura Ofstead of Women and Infants Hospital, who had treated Virgen for ten years, completed a "Physical Capacity Questionnaire" ("Questionnaire") six days before Virgen's hearing before the ALJ. (R. 653-56, ECF No. 7.) There Dr. Ofstead noted that Virgen's "significant" hip pain "limits [her] mobility," that one of her diagnoses was "[h]ip osteoarthritis," and that Virgen would

---

[2] A treating physician is someone "who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. §§ 404.1527(a)(2).

[3] Residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

2

"[l]ikely . . . benefit from hip replacement." (Id. at 654.) It was Dr. Ofstead's opinion that Virgen could rarely lift "something as heavy as 1 gallon of milk" and would frequently "need to lie down due to pain, fatigue, or the effects of medication." (Id. at 655.) Dr. Ofstead also thought Virgen's condition would cause her to be frequently "off task" at work. (Id.) Needless to say, Dr. Ofstead's opinion belies the RFC found here by the ALJ – light work (R. 23) – which would have Virgen "frequent[ly] lifting or carrying . . . objects weighing up to 10 pounds," and doing "a good deal of walking or standing" or, if "sitting most of the time[,] . . . pushing and pulling . . . arm or leg controls." 20 C.F.R. § 416.967(b).

The law says that opinions like Dr. Ofstead's – that is, those of treating physicians' – are to be given "controlling weight," if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2) (explaining that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). And even if not controlling, the weight given a treating physician's opinion must be supported by "good reasons." Id. §§ 404.1527(c)(2), 416.927(c)(2).

Here the ALJ gave Dr. Ofstead's opinion "less probative weight" because she is "just a primary care physician" and the assessment she provided on the Questionnaire was "inconsistent with [her] treating progress notes which show minimal examination/diagnostic test findings." (R. 25–26.) These are not reasons enough to discount Dr. Ofstead's opinion: for one, primary-care physicians are not ipso facto incredible. See Meadors v. Astrue, 370 F. App'x 179, 182–83 (2d Cir. 2010) (holding that ALJ erred in affording primary-care-physician's opinion "little weight" where he was the one "to whom [claimant] complained on several occasions of severe back pain, [and he] . . . had the opportunity to review the clinical findings and opinions of specialists with whom [claimant] did consult."); Lannon v. Comm'r of Soc. Sec. Admin., 234 F. Supp. 3d 951, 957 (D. Ariz. 2017) ("Although more weight generally is to be given to the opinion of a specialist, this does not mean that the primary care physician's opinion should be given no weight." (citation omitted)).

Moreover, treating physicians are qualified to make evaluations like Dr. Ofstead's without first recording the results of diagnostic tests in their patients' files. See Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel – not to provide evidence for disability determinations."). Their evaluations are subject to doubt, of course, to the extent they are

4

contradicted by other parts of an administrative record. See Bourinot v. Colvin, 95 F. Supp. 3d 161, 176–77 (D. Mass. 2015) (finding that treating-physicians' opinions properly discounted where there was "a steady, significant disconnect between [claimant]'s symptoms as described in the records and the limitations described in the primary care physicians' impairment questionnaires"). In Bourinot, for example, a treating physician noted on a physical-capacity questionnaire that the claimant's arthritis caused "marked limitations in her ability to grasp, turn, and twist objects, and use her fingers," id. at 177 – an opinion the ALJ reasonably found to be exaggerated when the administrative record contained statements from the claimant that her hands worked fine, and that she in fact enjoyed bowling. Id.

But unlike in Bourinot, where the ALJ pointed to evidence directly contradicting the opinion of treating physicians', the ALJ here divined contradiction out of thin air, interpreting an absence of evidence as evidence of absence. (See R. 25–26.) Not only that, there was corroboration in the record for Dr. Ofstead's diagnosing Virgen with hip osteoarthritis. (See, e.g., R. 510 (showing Dr. Maher B. El-Khatib reporting Virgen's diagnosis as "[b]ilateral hip osteoarthritis"); R. 617 (showing diagnosis of "[m]ild bilateral hip osteoarthropathy, left greater than right" based on medical imaging).) Indeed, specialists at Blackstone Orthopedics & Sports Medicine ("Blackstone") reported in April 2015 that Virgen's hips

5

showed signs of osteoarthritis. (R. 646). A physician at Blackstone, Dr. Maher B. El-Khatib, also noted that if hip injections continued to provide Virgen minimal relief, "[s]he will be followed up by the orthopedic surgeon for any recommendation." (R. 647.)

The ALJ's rush to disregard Dr. Ofstead's opinion, and its corroboration, is especially puzzling given the evidence on which he ultimately based Virgen's RFC: the opinions of non-testifying state-agency physicians and that of testifying expert Dr. Louis Fuchs. (See R. 25–26.) As Magistrate Judge Sullivan pointed out in her R. & R., the state-agency physicians formed their opinion of Virgen's functional capacity in 2014, before Virgen's treatment at Blackstone (R. & R. 14), that is, before an important part of Virgen's medical saga had come to pass. The state-agency physicians did not know, for example, that Virgen would go on to have surgery to alleviate her carpal tunnel syndrome. (R. 515.) Or that she would receive repeated injections to her hips and knees to relieve her arthritis (see, e.g., R. 527, 529, 644, 646), treatments with limited success as she "continu[ed] to have . . . pain" (R. 527).

That the state-agency physicians were not privy to parts of Virgen's medical record detracts from the weight that can be afforded their opinions. See Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the

information provided the expert." (quotation marks omitted)). In fact, if a state-agency physician reviews only a partial record, her "opinion cannot provide substantial evidence to support [an] ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations." Ledoux, 2018 WL 2932732, at *4; see also Rosario v. Apfel, 85 F. Supp. 2d 62, 68 (D. Mass. 2000) (finding that a non-treating physician's opinion is only entitled to "minimal, if any, weight" when it is based on a review of a partial record). To be sure, medical developments occurring after a state-agency-physicians' review do not preclude an ALJ from partially relying on that review, if it is found that the post-review developments do not constitute a significant worsening of the claimant's condition. See Giusti v. Astrue, No. CA 11-360ML, 2012 WL 4034512, at *10 (D.R.I. Aug. 22, 2012), adopted, 2012 WL 4036120 (D.R.I. Sept. 12, 2012). The ALJ in this case, however, made no such finding. (See R. 25-26.)

And Magistrate Judge Sullivan's reasoning that the testimony at the hearing by Dr. Fuchs – who was supposed to have reviewed Virgen's complete record – fills the gap in the state-agency review is a bridge too far. (R. & R. 14-15). Dr. Fuchs testified that his review of the record showed that besides "some pain" in Virgen's hip her "musculoskeletal system was okay," and that there was no evidence of "significant problems with the hips or knees." (R. 51-52.) But his examination by Virgen's attorney indicated that Dr. Fuchs too

7

had reviewed an incomplete record. (See R. 52-53.) This examination started with questions regarding the fact most at odds with Dr. Fuchs's sanguine opinion of Virgen's orthopedic health, namely, her myriad hip and knee injections. (Id.) What becomes clear in reviewing his testimony, though, is that Dr. Fuchs had not been provided the part of the record documenting these injections. (See id.) For when Virgen's attorney began by pointing Dr. Fuchs to pages 3, 20, and 22 of Exhibit 16F, Dr. Fuchs stopped the questioning at multiple points to ask for a page number – "What page is that, please?" – before divulging that his "CD starts at page 28." (Id.) Because Dr. Fuchs's testimony was itself premised on an incomplete record, it cannot be used to fill the gap in the state-agency-physicians' review.

The RFC formulated for Virgen – buttressed neither by the opinion of Virgen's treating physician, nor that of adequately informed non-treating sources – is not supported by substantial evidence. Therefore, the Court GRANTS Virgen's Motion (ECF No. 11) and DENIES Defendant's (ECF No. 15). This case is remanded to the Commissioner for further proceedings consistent with the foregoing. IT IS SO ORDERED.

/s/ William E. Smith
---
William E. Smith
Chief Judge
Date: September 30, 2018